## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES TRONKA, individually and on behalf
of all others similarly situated,

        Plaintiff,

  v.

QUALFON DATA SERVICES GROUP,
LLC,

        Defendant.

Civil Action No. 2:23-CV-01317-RJC

Judge Robert C. Colville

*ELECTRONICALLY FILED*

## PLAINTIFF'S UNOPPOSED MOTION FOR SETTLEMENT APPROVAL AND DIMISSAL WITH PREJUDICE WITH MEMORANDUM IN SUPPORT

Plaintiff, James Tronka, by and through his undersigned counsel, individually and on behalf of all others allegedly similarly situated ("Plaintiffs"), files this Unopposed Motion for Settlement Approval and Dismissal with Prejudice ("Motion") seeking the Court's approval of the Settlement, specifically, the Settlement Agreement, attached hereto as Exhibit 1, along with all exhibits thereto ("Settlement Agreement"), and certification of a collective action, for settlement purposes only. Approval of the proposed Settlement Agreement, Dismissal with Prejudice, and certification of a collective action is further supported by the accompanying Memorandum In Support. Plaintiffs further state:

1.     A bona fide dispute exists between Plaintiffs and Defendant Qualfon Data Services Group, LLC ("Defendant").

2.     The terms and conditions of the proposed settlement between Plaintiffs and Defendant, as defined and described in the Settlement Agreement, are fair, reasonable, and adequate.

3.     The form of the Notice of Settlement and the method of disseminating this information to the Collective, as described in the Settlement Agreement are fair, reasonable and adequate.

4.     That the method of allocating a settlement award to each member of the Settlement Collective is fair, reasonable, and adequate.

5.     That the attorneys' fees and costs are fair, reasonable, and adequate.

6.     Plaintiffs and the Putative Collective Members are similarly situated and certification of a collective action, for settlement purposes only, is warranted.

7.     Defendant does not oppose the relief requested herein.

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

This proposed settlement resolves a wage and hour lawsuit filed by Plaintiff, James Tronka, individually and on behalf of all others allegedly similarly situated, against Defendant, Qualfon Data Services Group, LLC ("Qualfon").[1] Plaintiff[2] alleged violations of Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.101, *et seq.* ("PMWA"), and the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1, *et seq.* ("PWPCL"). Although Defendant denies any and all liability, the Parties have agreed to a settlement, the terms of which are defined and described in the Settlement Agreement and Exhibits ("Settlement Agreement"). The Parties have agreed, subject to Court approval, to resolve these wage and hour claims on a collective-wide basis. The Settlement Agreement satisfies the criteria for approval of an FLSA collective action settlement because it resolves a bona fide dispute, was reached after contested litigation, and was the result of arm's length settlement negotiations by way of mediation conducted by The Honorable Kenneth J. Benson, a well-respected former Magistrate Judge for the United States District Court for the Western District of Pennsylvania. Accordingly, Plaintiff respectfully requests that the Court issue an order: (1) finding that the Settlement Agreement attached as Exhibit 1 is a fair and reasonable resolution of a bona

---

[1] Plaintiff filed an amended complaint after the Parties stipulated that Defendant, Qualfon Data Services Group, LLC, was the appropriate employing entity for Named Plaintiff and all other alleged similarly situated hourly call-center employees employed in Pennsylvania during the past three (3) years.

[2] Unless otherwise specified, capitalized terms used herein have the same meaning as the capitalized and defined terms in the Settlement Agreement submitted for approval with this Motion.

fide dispute; (2) conditionally certifying a collective action, as defined herein, for settlement purposes only; (3) approving the Notice Materials, including the Settlement Notice and Claim Form, attached as Exhibits B and C to the Settlement Agreement; (4) approving the method of dissemination for the Notice Materials; (5) approving the service award for Named Plaintiff, (6) approving the requested attorneys' fees and expenses; and (7) dismissing the underlying claims with prejudice.

## II.    PERTINENT FACTS

Qualfon operates customer engagement and contact centers that provide direct marketing, customer service and sales, tech support, and inside sales to its business clients' customers.[3] Plaintiff and Defendant initially began to discuss potential resolution of the claims soon after the commencement of this litigation. These discussions became more meaningful once the Court granted the Parties request for a stay of the proceedings to provide more time for the Parties to continue their ongoing settlement discussions, as well as attend a private mediation. To further this effort, the Parties engaged in an informal exchange of information wherein Defendant produced extensive timekeeping and payroll data related to Plaintiff and the Putative Collective Members to allow the Parties to evaluate Plaintiffs' claims and Defendant's potential exposure in order to facilitate the Parties' settlement discussions. In addition to reviewing the timekeeping and payroll information provided by Defendant, Collective Counsel also reviewed documents provided by Plaintiff and conducted extensive interviews with Plaintiff and other Qualfon call-center employees prior to mediation. After a full review of the information obtained and open and full debate over the contested legal and factual issues, and after engaging in rigorous settlement negotiations with the aid of Judge Benson, the Parties, with the assistance of Counsel, agree that

---

[3] See, https://www.qualfon.com.

the negotiated terms of the Settlement represent a fair, reasonable, and just compromise of disputed issues. With compromise from both sides, the Parties reached the Settlement Agreement now before the Court. The negotiations leading to this settlement were adversarial, non-collusive, and conducted at arm's length. The Parties share an interest in fully and finally resolving the issues raised in this action. Because the Parties recognize the expense and risks associated with prosecution and defense through trial and any possible appeal, as well as the risk of uncertainty of the outcome inherent in any litigation, they agree to be bound by the Settlement Agreement which they now ask this Court to approve. The Parties have conditioned the overall Settlement upon the Court's approval of the agreed upon settlement terms.

## III.    SUMMARY OF THE SETTLEMENT TERMS

### A.    The Settlement Fund

The Settlement Agreement establishes a Total Settlement Amount of $435,000.00 to settle claims against Defendant. Exhibit 1, ¶ 7(a). The Total Settlement Amount covers eligible Settlement Collective Members' awards, as well as attorneys' fees and costs of $150,180.00, a modest service award for the Named Plaintiff of $7,500.00, and third-party administrative fees and costs associated with allocation and disbursement of the settlement proceeds. See *id.*

### B.    Putative Collective Members

The individuals eligible to participate in the proposed settlement include the Named Plaintiff and the Putative Collective Members, who are defined as all current or former hourly call-center employees who worked for Qualfon in a position involved in customer service, anywhere in the Commonwealth of Pennsylvania, at any time from August 30, 2020, through the date of approval of the Settlement by the Court, who were identified in the timekeeping and payroll data produced by Qualfon for purposes of facilitating the Parties' settlement discussions.

### C.    Allocation Formula

Putative Collective Members who return claim forms will be paid their pro rata share of the Net Settlement Fund based on the number of workweeks that they worked for Defendants during the Collective Period.[4] Specifically, the Net Settlement Fund will be divided into equal shares based on the total number of workweeks worked by the Putative Collective Members during the Collective Period, with each workweek equal to one-share of the Net Settlement Amount— that is, if the total workweeks worked by the Putative Collective Members during the Collective Period equal 100 workweeks, then each workweek would represent 1/100 [1-Share] of the Net Settlement Amount. If a Putative Collective Member timely returns a claim form after receiving Notice, they will receive a payment at the rate calculated for one share from the Net Settlement Fund equal to the total number of workweeks they worked during the Collective Period. Defendant's records shall determine the overall workweeks worked by the Putative Collective Members. See Exhibit 1, ¶ 7(d).

### D.    Settlement Payments

All Payments from the Total Settlement Amount shall be distributed in accordance with the terms set forth in the Settlement Agreement. See Exhibit 1, ¶ 18.

### E.    CAFA Compliance

In order for the Parties to comply with the provisions of the Class Action Fairness Act of 2005 ("CAFA"), the Parties request that the Court not issue an order granting approval of the

---

[4] The Net Settlement Fund is calculated by deducting Collective Counsel's fees and costs, Named Plaintiff's service award, and the third-party administrator's fees and expenses from the Total Settlement Amount. See Exhibit 1, ¶ 7(a).

Settlement earlier than 90 days after the service of the notices required by CAFA, which Defendant will serve within 10 days of the filing of this Motion. *See* Exhibit 1, ¶ 9.

## IV.     ARGUMENT

### A.     The Standard and One-Step Procedure for FLSA Opt-In Settlement Approval

Because the Settlement has no binding effect on absent class members unless they affirmatively accept the benefits of the Settlement, it is governed by FLSA procedures rather than Rule 23, which is binding on absent class members unless they affirmatively opt *out* of the class. *Compare, e.g., Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984) ("a judgment in a properly entertained class action is binding on class members in any subsequent action") *and Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (explaining purpose of Rule 23 notice is to advise class members they will be *bound* by judgment unless they request exclusion) *with Greenwald v. Phillips Home Furnishings Inc.*, 2009 WL 259744 at *4 (E.D. Mo., Feb. 3, 2009) ("A collective action under [the FLSA, 29 U.S.C.] § 216(b) differs from class actions brought under Rule 23 . . . . A primary distinction is that under FLSA a similarly situated employee must 'opt in' to the collective action to be bound by it.").

In scrutinizing a settlement, "the primary focus of the court's inquiry in determining whether to approve the settlement of an FLSA collective action is not, as it would be for a Rule 23 class action, on due process concerns, but rather on ensuring that an employer does not take advantage of its employees in settling their claims for wages." *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2008) (internal citations omitted). Accordingly, courts grant final approval to FLSA opt-in settlements in a single step, rather than the Rule 23 procedure that utilizes preliminary approval, notice to the class members who will be bound unless they opt out, and final approval after an "opt out" period. *E.g., Hill v. World Wide Tech. Holding Co., Inc.*,

4:11CV02108 AGF, 2012 WL 5285927 (E.D. Mo. Oct. 25, 2012) (granting final approval of FLSA settlement as to both the named plaintiff and all eligible FLSA collective class members who elect to opt-in to the settlement).

"When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Simmons v. Enterprise Holdings, Inc.*, 2012 WL 2885919 at *1 (E.D. Mo. July 13, 2012) (citing *Lynn's Food Stores,* 679 F.2d at 1353). "Accordingly, as long as the Court is satisfied that a settlement reached in adversarial proceedings represents a fair and equitable compromise of a bona fide wage and hour dispute, the settlement may be approved." *Id.* Court review of an FLSA settlement is two-pronged. First, the Court must be satisfied that the settlement was the product of "contested litigation." Second, the Court must inquire as to whether the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores,* 679 F.2d at 1353-1354. Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness. *Id.* at 1354. If the proposed settlement reflects a reasonable compromise of contested issues, the Court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.*

"While the Third Circuit has not directly addressed the factors to be considered in deciding motions for approval of FLSA settlements, district courts have typically looked to the considerations set forth in *Lynn's Food*." *Brumley v. Camin Cargo Control, Inc.*, CIV.A. 08-1798 JLL, 2012 WL 1019337 (D.N.J. Mar. 26, 2012). This Court should readily conclude the Parties' Settlement here is a reasonable resolution of a *bona fide* dispute in contested litigation.

### B.    The Putative Opt-In Class Members are Similarly Situated

As a threshold matter, the Court may readily conclude that the employees eligible to participate in the settlement are "similarly situated" within the requirements of 29 U.S.C. § 216(b) of the FLSA, which is the standard for maintenance of an FLSA collective action. Here, this constitutes all current or former hourly call-center employees who worked for Qualfon in a position involved in customer service, anywhere in the Commonwealth of Pennsylvania, at any time from August 30, 2020, through the date of approval of the Settlement by the Court, who were identified in the timekeeping and payroll data produced by Qualfon for purposes of facilitating the Parties' settlement discussions. Because of these key similarities, including job duties/functions and applicable compensation policy, location and time frame, the Court may readily conclude the employees are "similarly situated" for purposes of effectuating this Settlement.

### C.    The Proposed Settlement Is the Product of Contested Litigation

The proposed Settlement is the product of contested litigation, and this conclusion is not altered by the Parties' ability to compromise this case early in the proceedings. In this Action, Named Plaintiff presented detailed allegations regarding Defendant's policies and practices. In its Answer, Defendant denied Named Plaintiff's material factual allegations and asserted numerous defenses that it argued would defeat Named Plaintiff's and putative Class Members' claims in whole or in part. Through cooperative, informal exchange of payroll and timekeeping data and other relevant job-related information, the Parties extensively investigated Named Plaintiff's claims. In addition to their factual investigation, the Parties also analyzed the various legal issues implicated in this case, including the standards for assessing and defending claims for liquidated damages under the FLSA. The settlement of this lawsuit was achieved after the Parties participated in a mediation before Judge Benson, and only after the exchange of key information on disputed

fact issues and the vetting of the Parties' positions through arm's length negotiation in the course of protracted settlement discussions.

### D.    The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties

The second prong of the Court's settlement approval inquiry focuses on two issues. The first issue is confirming the existence of a *bona fide* dispute between the Parties under the FLSA. The second issue involves a review of the fairness and reasonableness of the proposed Settlement. Both are easily satisfied.

#### 1.    A *Bona Fide* Dispute Existed Between the Parties

In the instant case, there is a bona fide dispute over whether Defendant violated the FLSA. Plaintiff has alleged Defendant does not pay for all time that Plaintiff and the Putative Collective Members worked on its behalf.[5] Defendant denies Plaintiff's allegations and maintains that it has properly paid Plaintiff and the Putative Collective Members for all hours worked, maintains policies that comply with state and federal law, trains all employees on those policies, and adheres to its policies and the laws governing its wage and hour practices.

If Plaintiff's allegations ultimately proved correct, Defendant would be faced with the prospect of a substantial monetary verdict exceeding the amount of the Settlement, including additional potential damages for willfulness and statutory liquidated damages, as well as an obligation to pay legal fees and costs incurred by Plaintiff to prosecute the case through trial instead of the comparatively small fees incurred to obtain this early resolution. If Defendant prevailed,

---

[5] Specifically, Plaintiffs have alleged Defendant failed to pay them for their initial start-up time, time spent logging in (and out) for their lunch breaks, time spent completing calls post-shift, time spent trouble-shooting technical issues, time spent on short breaks lasting less than twenty (20) minutes, and for unpaid minimum wage due to kickbacks.

then Plaintiff and the Putative Collective Members would obtain no recovery of any kind or a much smaller recovery than effectuated through the settlement.

This lawsuit was initially filed July 21, 2023, as hybrid collective/class action. After filing, the Parties conferred in good faith and agreed to engage in an informal exchange of information in an effort to obtain an early resolution of this matter. Based on that agreement, the Parties sought and obtained a stay of the litigation to allow them to continue settlement discussions and ultimately mediate this matter to resolution with Judge Benson.

No settlement occurred until Collective Counsel possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained. The risks of non-recovery were considered by Collective Counsel in negotiating the proposed Settlement. Oftentimes, the best opportunity to resolve a case is when uncertainty over those still undecided issues remains for both sides.

The Settlement in this case came after contested litigation and was a product of formal mediation. The Parties' positions were staked out in the Parties' pleadings and during the course of the Parties' settlement negotiations, and the Court should readily conclude a *bona fide* dispute between the Parties existed.

## 2. The Proposed Settlement Is Fair and Reasonable

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. See *Lynn's Food Stores, Inc.*, 679 F.2d at 1355; *Wade v. Werner Trucking Co.*, No. 10 Civ. 270, 2014 WL 2535226, at *1 (S.D. Ohio June 5, 2014); *Bartlow v.*

*Grand Crowne Resorts of Pigeon Forge*, No. 11 Civ. 400, 2012 WL 6707008, at \*1–2 (E.D. Tenn. Dec. 26, 2012).[6]

Collective actions under Section 216(b) of the FLSA require workers to affirmatively opt-in to the litigation, unlike a class action pursuant to Federal Rule of Civil Procedure 23. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 73– 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."); *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) ("While Congress could have imported the more stringent criteria for Collective certification under Fed. R. Civ. P. 23, it has not done so in the FLSA."); *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 594 (S.D. Ohio 2002) ("[I]n an FLSA "opt-in" collective action the requirements need not be strictly observed because there are no absent Class Members for the court to protect."). Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), abrogated by *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *Thompson v. Bruister & Assocs., Inc.*, 967 F. Supp. 2d 1204, 1222 (M.D. Tenn. Aug. 23, 2013). Accordingly, the exacting standards for approval of a class action settlement under Rule 23 do not apply to an FLSA settlement under the collective action provisions of 29 U.S.C. § 216(b). *Crawford*, 2008 WL 4724499, at \*3.

---

[6] "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Bozak v. FedEx Ground Package Sys.*, No. 3:11-cv-00738-RNC, 2014 U.S. Dist. LEXIS 106042, at \*3 (D. Conn. July 31, 2014). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d 1354; *Gentrup v. Renovo Servs., LLC*, No. 07 Civ. 430, 2011 WL 2532922, at \*2 (S.D. Ohio June 24, 2011); *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 56089 (E.D. Ky. July 22, 2008).

The FLSA Settlement in this case meets the standard for approval. The Settlement was the result of contested litigation with significant data exchanged between the Parties and arm's length negotiations. Recognizing the uncertain legal and factual issues involved, the Parties reached the Settlement after mediation before Judge Benson. At all times during the settlement negotiation process, negotiations were conducted at arm's length. The Total Settlement Amount is substantial in light of the nature of the off-the-clock claims alleged by Plaintiffs and the Putative Collective Members. The proposed allocation of the Settlement is also reasonable. It reflects the proportion of damages owed to each eligible Settlement Collective Member based on their total workweeks of employment with Defendant during the relevant window of recovery.

According to the Settlement Agreement, awards in this case will provide a significant recovery for the Settlement Collective Members' claims. This Settlement constitutes a substantial recovery for all Collective Members and is calculated to ensure appropriate proportionality dependent on the total weeks worked by each Settlement Collective Member.

The Settlement eliminates the inherent risks both sides would bear if this complex litigation continued to resolution by a jury. As a compromise, and to provide Defendant with the certainty of a ceiling on liability, the Total Settlement Amount is capped at $435,000.00. Named Plaintiff's counsel supports this compromise, in view of the disparity of factual testimony anticipated amongst both plaintiff and defense witnesses, and because the Net Settlement Fund represents a significant portion of the wages allegedly due to the Putative Collective Members based on Defendant's payroll data. In sum, these are patently reasonable compromises in light of the risks and costs associated with prosecuting the case to a jury trial. Under these circumstances, a presumption of fairness should attach to the Settlement. *See Lynn's Food Stores*, 679 F.2d at 1354

(the adversarial nature of a litigated FLSA case indicates fairness). Several specific factors confirm the Settlement's fairness and reasonableness.

a.    **Public Policy Favors Settlements**

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992). This is particularly true in complex cases such as this, where substantial resources can be conserved by avoiding the time, cost, and rigor of protracted litigation. *See Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor"). The Parties' early settlement is a model of adversarial positions coupled with cooperative exchange of critical information to enable the Parties and their counsel to evaluate the claims and defenses without protracted expense and burden on the Court.

Here, it is certainly in the public interest to approve this Settlement. The Settlement resolves the claims of Plaintiff and the Collective in exchange for a fair return, eliminates the risk to Plaintiff and the Putative Collective Members of complete non-recovery, provides certainty to Defendant, and eases the burdens on the already heavily-taxed courts. In sum, given the complexity, expense, likely duration and risks of litigation, the state of the proceedings to date, the negotiations leading up to, and the ultimate terms of the Settlement Agreement, the proposed Settlement is fair, adequate and reasonable.

b.    **Substantial Obstacles Exist if the Litigation Continues, and the Settlement Offers Substantial, Immediate Relief**

The Parties disagree about the merits of Named Plaintiff's and the Putative Collective Members' claims and the viability of Defendant's defenses. If litigation continues, Named Plaintiff and the Putative Collective Members would face many obstacles, including (i) the risk that the case would not be certified for a class or collective action; (ii) challenges to proving damages; (iii) risk of decertification; and (iv) the inherent risks of a jury trial. The proposed Settlement brings immediate monetary value to each of the Class Members who elect to participate. Although the recovery at trial potentially could have been greater than sums received under the Settlement Agreement, it is also possible the recovery would have been less, or nothing at all. For instance, Defendant at the outset contended that the putative Class Members were properly compensated under state and federal law, and that any failure to pay Qualfon's employees was in good faith. If the jury were to agree with Defendant, Named Plaintiff and the Putative Collective Members would likely recover little or nothing. Additionally, proposed Settlement covers a three (3) year statute of limitations, and certain Putative Collective Members may not receive any compensation if a jury were to conclude that a two (2) year FLSA statute of limitations was more appropriate.

Moreover, Plaintiff would have to obtain class or collective action certification to present class-wide claims to a jury. Although Defendant concedes the potential class members are similarly situated for settlement purposes, they would have vigorously argued that various differences in job duties and responsibilities preclude class and collective action certification had litigation continued. Absent settlement, this issue remained uncertain.

In the face of these material disputes, it is significant that this Settlement brings Plaintiff and the Putative Collective Members meaningful monetary value now, not years from now, and provides certainty regarding the outcome. *In re King Resources Co. Securities Litig.*, 420 F. Supp.

610, 625 (D. Colo. 1976) ("the Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future."). "In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citing cases).

**c.    This Was a Complex and Potentially Lengthy Case**

In evaluating a proposed collective settlement, the Court also must weigh the risks, expense and delay the plaintiffs would face if they continued to prosecute the litigation through trial and appeal against the amount of recovery provided to the collective in the proposed settlement. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003). Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement in a representative action. *See e.g., In re Telectronics Pacing Sys., Inc.* 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). For class actions in particular, courts view settlement favorably because it "avoids the costs, delays and multitudes of other problems associated with them." *Id.* at 1013.

Here, if not for the Settlement, the case would have continued to be fiercely contested by the Parties. Defendant, which is represented by capable and well-versed wage and hour counsel, have demonstrated the commitment to defend the case through trial and beyond trial, if necessary.

Should this case continue before this Court, extensive discovery remains, both as to the appropriateness of class and collective certification and as to the merits of the underlying claims, including many depositions of Putative Collective Members in varying positions, written discovery, and likely engagement of costly expert witnesses. Likewise, Plaintiff would move for both conditional certification of a collective action pursuant to 29 U.S.C. § 216(b) and certification

of a class action pursuant to Federal Rule of Civil Procedure 23(b)(3). Additionally, both Parties would likely brief and file dispositive motions.

The Parties have exchanged significant amounts of data regarding Plaintiff and the Putative Collective Members' claims. Further, Collective Counsel has been in regular communication with Plaintiff regarding his claim for alleged unpaid time and have reviewed client documents provided from both Plaintiff and Defendant. This time and effort spent allowed Collective Counsel to create a compilation of damage assessments for Plaintiff and the Putative Collective Members. The Parties engaged in numerous conversations over the course of several months focused on attempting to resolve this case, and ultimately participated in formal mediation. Collective Counsel was well informed of the available damages and clearly understood the legal and factual issues involved and were able to meaningfully engage in settlement negotiations with Defendant.

The expense of continued litigation would be substantial as the Parties would have to complete a lengthy and extensive trial. Any trial would likely last several weeks, and involve numerous attorneys and witnesses; the introduction of voluminous documentary and deposition evidence; vigorously contested motions; and the expenditure of enormous amounts of judicial and counsel resources. Even if successful at trial, there most certainly would be appeals which would deny Named Plaintiff and the Putative Collective Members any recovery for years. Avoiding such unnecessary expenditure of time and resources clearly benefits all parties and the Court. *See Smith v. TradeGlobal, LLC*, No. 1:19-CV-192, 2020 WL 5797897, at *2 (S.D. Ohio Sept. 29, 2020) (recognizing that "[c]ontinued litigation would involve considerable expenditures of time and resources of the parties and the Court. If this case were to continue, the parties would expend significant time and money prosecuting the litigation through dispositive motions, trial, and possible appeals.").

The value of an immediate recovery here outweighs the mere possibility of future relief after protracted and expensive litigation. Accordingly, the complexity and prospective expense and duration of litigation weigh in favor of approving the proposed Settlement.

### d.    The Parties and Their Counsel Support the Settlement

After thorough investigation of the facts and law, the Parties have gained a comprehensive knowledge of their respective claims and defenses. Additionally, the Parties have ample evidence to make an informed assessment of the proposed Settlement. "[T]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties. Courts have consistently refused to substitute their business judgment for that of counsel." *Id.* Based on their knowledge of the case and the applicable law, as well as their experience in similar FLSA actions, the Parties' counsel believe the Settlement is fair, reasonable, and adequate. The Parties respectfully suggest this Court should conclude the proposed Settlement reflects a fair resolution of a *bona fide* dispute under the FLSA and approve the Settlement.

## V.    CERTIFICATION OF A SETTLEMENT COLLECTIVE IS WARRANTED

Plaintiff seeks certification of a collective action, as defined below:

> All current or former hourly call-center employees who worked for Qualfon in a position involved in customer service, anywhere in the Commonwealth of Pennsylvania, at any time from August 30, 2020, through the date of approval of the Settlement by the Court, who were identified in the timekeeping and payroll data produced by Qualfon for purposes of facilitating the Parties' settlement discussions and the Named Plaintiff.

See Proposed Approval Order, attached as Exhibit A to the Settlement Agreement. These individuals are similarly situated in terms of their job descriptions, job titles, and job duties. Moreover, their claims share the same alleged factual basis. Importantly, Defendant does not contest the certification of a collective action, for purposes of settlement only.

## VI.    SERVICE AWARD FOR NAMED PLAINTIFF

The time and dedication that an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award "above and beyond what the typical class member is receiving." *Cimarron Pipeline Constr., Inc. v. National Council on Compensation Ins.*, 1993 WL 355466 at *2 (W.D. Okla. June 8, 1993) (awarding $10,000 service award to each of three class representatives); *Camp v. Progressive Corp.*, 2004 WL 2149079 at *7 (E.D. La. Sept. 23, 2004) (approving up to $10,000 in service awards to class representative and other plaintiffs). Service awards "are particularly appropriate in the employment context [because] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (awarding $10,523 out of class fund of $75,000).

Named Plaintiff, James Tronka, substantially assisted counsel in achieving this Settlement on behalf of the Collective, and should receive a service award. Named Plaintiff was responsible for initiating this action and provided invaluable guidance and assistance on numerous occasions to Named Plaintiff's counsel. Named Plaintiff also assisted counsel in evaluating Defendant's proffered defenses. There is no question that the other employees have substantially benefited from Named Plaintiff's actions. Without Named Plaintiff's efforts, this case would not have been brought and this Settlement would not have been achieved. In light of these efforts, payment of a $7,500.00 service award to Mr. Tronka is amply justified.

## VII.    ATTORNEY'S FEES AND EXPENSES

Defendant has agreed to pay the Collective Counsel's attorneys' fees and costs as set forth in the Settlement Agreement. Specifically, Plaintiff asks this Court to approve an award of

attorneys' fees of 33 1/3% of the Total Settlement Amount, exclusive of litigation costs and expenses. See Exhibit 1, ¶ 7(b). Defendant does not object to the Court approving such an award of attorneys' fees and expenses.

Under the FLSA, plaintiff are entitled to reasonable attorneys' fees spent in recovering unpaid wages. 29 U.S.C. § 216(b). An award of attorney fees to class counsel is also appropriate under Rule 23(h). The typical method for awarding attorneys' fees in common fund cases, such as this case, is to award a percentage of the settlement funds. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); see *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (l0th Cir. 1995); *Gottlieb v. Barry*, 43 F.3d 474, 482 (l0th Cir. 1994). The common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Brown v. Phillips Petroleum Company*, 838 F.2d 10 451,455 (10th Cir. 1988) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (l980)). Thus, the percentage award results "in a sharing of the fees among those benefited by the litigation." *Brown*, 838 F.2d at 454.

In cases involving a fee-shifting statute, the Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Following that advice, and desiring to avoid a second litigation over fees, the Parties have agreed to settle their dispute over the award of attorneys' fees, costs, and expenses.

The agreed fee amount of $144,855[7] represents 33 1/3% of the Total Settlement Amount and is eminently reasonable. *See Wiles v. Southwestern Bell Tel. Co.*, 2011 WL 2416291, at *4-5 (W.D. Mo. June 9, 2011) (awarding 33 1/3% of the common fund in attorneys' fees); *Johnson v. Brennan*, 2011 WL 4357376 at *13 (S.D.N.Y. September 16, 2011) (awarding 33 1/3% of recovery, stating, "In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award."); *In re Milos Litigation,* 2011 WL 6015705 (S.D.N.Y. 2011) (33 1/3%); *Williams v. Aramark Sports, LLC,* 2011 WL 4018205 at *10 (E.D. Pa. Sept. 9, 2011) (33 1/3%, stating that percentage of recovery is favored method in "common fund" cases.); and *Boone v. City of Philadelphia*, 668 F. Supp. 693, 714 (E.D. Pa. 2009) (citing a study of 289 class action settlements in the Third Circuit indicating that the average percentage awarded was 31 1/7% and the median was 33 1/3%).

In applying the common fund method, courts award attorneys' fees as a percentage of the entire maximum gross settlement fund—and not as a percentage of the amount claimed—even where amounts to be paid to settlement class members who do not file claims revert to defendant. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 480–81 (1980) (stating that this approach "rectifies inequity by requiring every member of the Collective to share attorney's fees to the same extent that he can share the recovery"); *Moulton*, 581 F.3d at 352 (rejecting "objectors focus on the amount *claimed* rather than the amount allocated"); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436–47 (2d Cir. 2007) (holding that because the entire fund was created through the efforts of counsel, that the allocation of fees by percentage should be awarded based on the total funds made available, whether claimed or not); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d

---

[7] Named Plaintiff's counsel also seeks an additional $5,325.00 from the Total Settlement Amount as reimbursement for out-of-pocket costs associated with the litigation, bringing the total requested and negotiated award to Plaintiff's counsel to $150,180.00.

1291, 1295-98 (11th Cir. 1999) ("In *Boeing Co. v. Van Gemert*, the Supreme Court settled this question by ruling that Collective counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed.") (quoting Herbert B. Newberg & Alba Conte, *Newberg on Collective Actions* § 14.03 (3d ed. 1992)); *Williams v. MGM-Pathe Commc'ns. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (reversing district court's award of a percentage of the claimed fund and awarding attorneys' fees of a percentage of funds made available).

The work that Collective Counsel has performed in litigating and settling this case demonstrates their commitment to Named Plaintiff and the Putative Collective Members and to representing their interests and establishes the reasonableness of their fees. Collective Counsel has committed substantial resources to prosecuting this case. The work that Collective Counsel has performed, including investigating claims, reviewing documents, drafting the complaint, conferring with clients, legal research, discovery, preparing for and attending mediation, and negotiating the settlement terms and reducing them to a formal settlement agreement, was significant and contributed to the substantial recovery obtained on behalf of the Collective. *See Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 WL 4760910, at *7 (S.D.N.Y. Oct. 5, 2012), (approving requested fee where "[t]he work that Collective Counsel . . . performed in litigating and settling th[e] case demonstrate[d] their commitment to the Collective and to representing the Collective's interests").

The fee requested by Collective Counsel also is reasonable because they will continue to perform a significant amount of work on behalf of the Putative Collective Members in implementing the Settlement and assisting with its administration. Nonetheless, Collective Counsel will not make a supplemental fee application. Collective Counsel anticipates that they

will be required to spend a significant amount of additional time answering questions from eligible Putative Collective Members pertaining to the Settlement and its administration. Collective Counsel take very seriously their continuing obligation to represent the Putative Collective Members during the settlement approval process and the disbursement phase, which they will honor.

Plaintiff's counsel should not be penalized for achieving this expeditious benefit for the Class. A fee reduction based on an expeditious settlement would only incentivize unnecessary litigation and use of the Court's resources. *See In re Iowa Ready-Mix Concrete Antitrust Litig.*, 2011 WL 5547159 at *1-3 (N.D. Ia. Nov. 9, 2011) (*sua sponte* increasing attorney fee from 33.33% to 36.04% in recognition of efficient early settlement).

As mentioned above, Collective Counsel's fee has been agreed upon by the Parties and will be paid without diminishing the fairness of the recovery to the Collective. Pursuant to the prescription of the Supreme Court in *Hensley*, 461 U.S. at 437, the Court should not disturb Parties' settlement of the amount of Plaintiffs' counsel fees.

## VIII.   CONCLUSION

This Settlement was reached as a result of contested litigation and resolves a *bona fide* dispute between the Parties. The Parties engaged in thorough investigation of the facts and law and reached a Settlement that eliminates the Parties' respective risks and minimizes their expenses and the burden on the Court. The Settlement is fair, reasonable, and adequate, and provides Named Plaintiff and the Putative Collective Members a Total Settlement Amount which consists of a significant portion of the unpaid wages allegedly due under the FLSA, as well as an equal amount in liquidated damages, free and clear of attorneys' fees or expenses.

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order: (1) finding that the Settlement Agreement attached as Exhibit 1 is a fair and reasonable resolution of a bona fide dispute and approving the settlement set forth in the Settlement Agreement; (2) approving the Notice Materials, including the Settlement Notice and Claim Form, attached as Exhibits B and C to the Settlement Agreement; (3) approving the method of dissemination for the Notice Materials; (4) approving the service awards for the Named Plaintiffs; (5) approving the requested attorneys' fees and expenses; and (6) dismissing the underlying claims with prejudice.

Respectfully Submitted:

**WEISBERG CUMMINGS, P.C.**

September 18, 2024
Date

/s/ Derrek W. Cummings
Derrek W. Cummings
dcummings@weisbergcummings.com

Larry A. Weisberg
lweisberg@weisbergcummings.com

2704 Commerce Drive, Suite B
Harrisburg, PA 17110-9380
Phone: (717) 238-5707
Fax: (717) 233-8133

*Counsel for Plaintiff and Collective*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date applied by the Court's ECF filing system, I electronically filed the foregoing with the Clerk of Court using CM/ECF.


*/s/ Derrek W. Cummings*
Derrek W. Cummings